Filed 5/16/23  In re R.R. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re R.R., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B322854 (Super. Ct. No. J073038) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>A.R.,<br><br>    Defendant and Appellant. | |

A.R. (mother) appeals from the juvenile court's orders summarily denying her petition for modification and terminating her parental rights to her seven-month-old daughter, R.R.  (Welf.

& Inst. Code, §§ 388, 366.26.)[1]  Mother contends she made a prima facie showing in her section 388 petition that warranted an evidentiary hearing.  She also contends the juvenile court erred in finding that the beneficial parental relationship exception to adoption did not apply.  (§ 366.26, subd. (c)(1)(B)(i).)  We affirm.

*Facts and Procedural History*

R.R. was born in February 2022.  At the time of R.R.'s birth, mother tested positive for fentanyl and marijuana.  R.R. also tested positive for substances.  The juvenile court detained R.R. and placed her in the home of maternal aunt after R.R. was discharged from the hospital.

R.R. is mother's third child to be taken into protective custody at birth due to mother's substance abuse and untreated mental health issues.  Mother's two older children, E.C., born in 2015, and A.R., born in 2017, were dependents of the juvenile court.  After mother failed to reunify with them, her parental rights were terminated, and the children were adopted in 2019.

After R.R.'s birth, Ventura County Human Services Agency filed a new dependency action as to R.R. due to mother's substance abuse issues, mental health issues, and mother's two prior dependency cases.  (§ 300, subds. (b), (j).)  The detention report indicated that, at the time of R.R.'s birth, mother reported she had no prenatal care, denied any substance use or history of substance abuse, but "was evasive and appeared high."

The agency recommended reunification services be bypassed for mother given her ongoing issue of substance abuse and her failure to reunify with her two other children.  The

---

[1] All further statutory references are to the Welfare and Institutions Code.

agency also reported that mother continued to deny any substance abuse. At the combined jurisdiction and disposition hearing, the juvenile court sustained the petition, declared R.R. a dependent child of the juvenile court, and ordered her suitably placed. The juvenile court also ordered reunification services bypassed pursuant to section 361.5, subdivisions (b)(10), (b)(11), and ordered monitored visits for mother, two times per week for one hour. The juvenile court set the matter for a permanent placement hearing. (§ 366.26.)

In the meantime, mother had moved in with maternal grandmother who was providing childcare for R.R. while maternal aunt worked. During this time, mother had regular access to R.R. and would help maternal grandmother with the childcare of R.R.

Prior to the contested section 366.26 hearing, mother filed a section 388 petition requesting reunification services and increased visitation with R.R. In support of her petition, mother offered that she had maintained consistent visitation and regularly helped maternal grandmother with the daily care of R.R., including feeding and bathing R.R., changing her diapers, and comforting her when she was fussy.

Mother also offered that she had enrolled in and completed a drug treatment program through A New Start for Moms and intended to participate in the program's aftercare, was attending Narcotics/Alcoholics Anonymous (NA/AA) meetings two to five times per week since March 2022, and consistently tested clean. Mother also offered that R.R. was comfortable with mother and attached to her, and that mother had gained an understanding of the importance of providing R.R. with a stable and drug-free lifestyle.

The juvenile court summarily denied the petition without an evidentiary hearing. The juvenile court's order found neither changed circumstances nor that the proposed change of order would be in R.R.'s best interest. In a written ruling attached to the order denying the petition, the juvenile court explained, "In March 2022 the mother denied ever using drugs despite having given birth to three drug-exposed infants. The mother [also] denied ever[] being arrested on drug related offenses, even though that was not true."

The juvenile court also noted that, "mother's [section 388 petition] indicates she has completed an outpatient drug treatment program which she did not begin until [March 14, 2022]. She contends now that her sobriety date is also [March 14, 2022], without providing any explanation why, until now[,] she has consistently denied ever using any illegal drugs."

Further, the juvenile court found the reports attached to the petition did not provide "qualitative information" on mother's progress in the drug treatment program, nor did the petition include "any clear information regarding what mental health services she is receiving or if she was ever evaluated for mental health services."

The juvenile court concluded, "[g]iven the mother's history of drug use, her inexplicable denial of drug use and the short time she has allegedly remained drug free, the mother has not made a prima face showing that there has been a change of circumstances nor that the presumption that the child should remain in care is overcome."

At the contested section 366.26 hearing, mother testified and asserted that R.R.'s adoption was precluded by the beneficial parental relationship exception. (§ 366.26, subd. (c)(1)(B)(i).)

4

After listening to testimony and considering the evidence, the juvenile court rejected mother's assertion, found by clear and convincing evidence R.R. was adoptable, and terminated parental rights with adoption as the permanent plan.

*Discussion*

*Summary Denial of Mother's Section 388 Petition*

Mother contends the juvenile court abused its discretion when it summarily denied her section 388 petition without holding an evidentiary hearing.

To be entitled to an evidentiary hearing on a section 388 petition, the parent must make a prima facie showing of (1) a change of circumstances or new evidence, and that (2) modification of the prior order would be in the best interests of the minor child.  (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 (*Ernesto R.*); *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806; see Cal. Rules of Court, rule 5.570(d)(1), (e).)  "If the liberally construed allegations of the petition do not show changed circumstances such that the child's best interests will be promoted by the proposed change of order, the dependency court need not order a hearing."  (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250 (*Anthony W.*).)  In determining whether a parent has made a prima facie showing under section 388, we may consider the entire factual and procedural history of the case.  (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.)

We review the juvenile court's summary denial of a section 388 petition for abuse of discretion.  (*Anthony W.*, *supra*, 87 Cal.App.4th at p. 250.)  "Under this standard of review, we will not disturb the decision of the [juvenile] court unless the [juvenile] court exceeded the limits of legal discretion by making

5

an arbitrary, capricious or patently absurd determination. [Citation.]"  (*In re A.S.* (2009) 180 Cal.App.4th 351, 358.)

Here, mother's section 388 petition alleged her circumstances had changed because she had maintained consistent and regular visitation with R.R., had enrolled in and successfully completed a drug treatment program, had been attending NA/AA meetings two to five times per week, and had consistently tested clean for both the agency and her drug treatment program.

Although the petition showed mother was making efforts to address her substance abuse issues, the juvenile court found that mother's petition did not provide "qualitative information" about her progress in the drug treatment program, nor did it include "any clear information regarding what mental health services [mother] is receiving or if she was ever evaluated for mental health services."  This is relevant because the sustained allegations included not only mother's substance abuse issues but also her mental health issues that interfered with her ability to care for R.R.

Nevertheless, mother's recent sobriety, although commendable, reflects "changing" not "changed" circumstances. (See *Ernesto R., supra,* 230 Cal.App.4th at p. 223 [requiring a "substantial change of circumstances"]; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9 ["It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform"]; *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423-424 [200 days of sobriety not enough]; *In re Angel B.* (2002) 97 Cal.App.4th 454, 463 (*Angel B.*) [parent's sobriety very brief compared to many years of addiction].)

Even if there were a change in circumstances, mother has failed to show how a change in the case plan to provide her with reunification services and increased visitation would be in R.R.'s best interest. Mother's petition asserted, among other things, that reunification services and increased visits were in R.R.'s best interest because mother maintained consistent visits with R.R., during those visits, mother regularly "help[ed]" maternal grandmother with R.R.'s daily care, R.R. was comfortable with and attached to mother, and through mother's drug recovery process, she had gained an understanding of the importance of providing a "stable and drug free" lifestyle for herself and her child.

But by the time of the section 366.26 hearing, R.R. was seven months old and had been living in a stable, loving, and drug-free home with maternal aunt since she was three days old. Although mother's visits with R.R. were consistent, they never progressed beyond monitored visits, and there is no evidence that mother requested additional or unsupervised visits prior to her section 388 petition.

Given mother's long history of substance abuse, her failure to reunify with her two older children who were detained under similar circumstances, and considering mother's short period of sobriety, the juvenile court acted well within its discretion in denying mother's petition without holding an evidentiary hearing. (See Cal. Rules of Court, rule 5.570(d)(1) [juvenile court may summarily deny section 388 petition that fails to show a change of circumstances or new evidence that may require a change of order].)

7

*Beneficial Parental Relationship Exception*

Alternatively, mother contends that the juvenile court erred in finding the beneficial parental exception to adoption did not apply. She also contends this court should reverse and vacate the juvenile court's order terminating parental rights and direct the juvenile court to enter a permanent plan other than adoption. As we explain below, mother's contentions are without merit.

""""At a permanency plan hearing, the [juvenile] court may order one of three alternatives: adoption, guardianship or long-term foster care. [Citation.] If the dependent child is adoptable, there is a strong preference for adoption over the alternative permanency plans." [Citation.]"" (*In re Katherine J.* (2022) 75 Cal.App.5th 303, 316, quoting *In re B.D.* (2021) 66 Cal.App.5th 1218, 1224.) If the juvenile court finds that the child is adoptable, it must terminate parental rights unless a statutory exception applies. (§ 366.26, subd. (c)(1).)

One exception to this rule is the parental-benefit exception, which allows the juvenile court to avoid termination if it "finds a compelling reason for determining that termination would be detrimental to the child" because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) To avoid termination of parental rights under this exception, a parent "must show, by a preponderance of the evidence, three things. [First,] [t]he parent must show regular visitation and contact with the child . . . . [Second,] the parent must show that the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship. And [third,] the parent must show that terminating that attachment

8

would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home. When the parent has met that burden, the parental-benefit exception applies such that it would not be in the best interest of the child to terminate parental rights, and the court should select a permanent plan other than adoption." (*In re Caden C.* (2021) 11 Cal.5th 614, 636-637 (*Caden C.*).)

Our review of the juvenile court's ruling on whether the parental-benefit exception applies incorporates two standards of review. (*Caden C.*, *supra*, 11 Cal.5th at pp. 639-641.) We apply the substantial evidence standard to the first two elements of the exception and abuse of discretion to the third element. (*Ibid.*)

*Substantial Evidence Supports the Juvenile Court's*
*Determination the Parental-Benefit Exception Did Not Apply*

As to the first element, the juvenile court did not make an express finding that mother maintained regular visitation with R.R., but the record supports an implied finding that she did. For example, the juvenile court expressly stated this was a "rather unique situation" where mother had "access" and "contact" with R.R., approximately three days per week, because mother lived in the home with maternal grandmother who was the primary childcare provider for R.R. while maternal aunt was at work.

Respondent contends that "[i]f mother met this element, she barely did so." Because inquiry as to this first element is "straightforward," that is, "just whether 'parents visit consistently,'" we presume the first element is met. (See *Caden C.*, *supra*, 11 Cal.5th at p. 632; § 366.26, subd. (c)(1)(B)(i).)

As to the second element, in determining whether the "'child would benefit from continuing the relationship,'" the focus is on the child. (*Caden C.*, *supra*, 11 Cal.5th at p. 632.) The exception must be examined on a case-by-case basis, taking

9

into account "a slew of factors" which affect a parent/child bond such as, "'[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.'" (*Ibid.,* quoting *In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.)

At the time of the contested section 366.26 hearing, R.R. was seven months old, had never lived with mother, and instead, had lived with maternal aunt since birth. Mother testified that she had a "very good" relationship with R.R., regularly "help[ed]" maternal grandmother with R.R.'s care, and that R.R. was comfortable with mother and was happy to see her. But a parent who seeks to invoke the parental-benefit exception "must do more than demonstrate 'frequent and loving contact[,]' [citation] an emotional bond with the child, or that parent and child find their visits pleasant. [Citation.] Instead, the parent must show that he or she occupies a 'parental role' in the child's life." (*In re Derek W.* (1999) 73 Cal.App.4th 823, 827.)

While there was evidence of mother's generally positive interactions with R.R., the juvenile court noted there was some concern raised by the agency regarding how much time and how much interaction mother had with R.R. For example, one report indicated that during a home visit in March 2022, a social worker observed that mother "did not hold, did not see," and "did not interact with the child at all during [the] family time visit." Instead, it was maternal grandmother who tended to the child while mother "stayed seated in the dining area eating her breakfast." In April 2022, during a phone call with a social worker, mother stated that she was "leaving to be 'far away from Oxnard' so [R.R.] 'was no longer [her] problem.'"

This evidence undermines mother's contention that she occupied a parental role in R.R.'s life and their bond was significant such that terminating the relationship would be detrimental to R.R.

Moreover, there is no evidence that R.R. lacks an active parent because maternal aunt has provided a loving and stable home for R.R., has cared for her physical, social, and emotional needs, and is committed to adopting her. Indeed, "[a] biological parent . . . may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent. [Citation.] A child, [especially a young child such as R.R.,] . . . should not be deprived of an adoptive parent when the natural parent has maintained a relationship that may be beneficial to some degree, but that does not meet the child's need for a parent." (*Angel B.*, *supra*, 97 Cal.App.4th at p. 466.)

Substantial evidence supports the juvenile court's finding that there was "not . . . [a] substantial bond established between [mother] and [R.R.]" such that R.R. would benefit from continuing the relationship.

*No Abuse of Discretion in Ruling that Mother Failed*
*to Establish the Third Element of the Parental-Benefit Exception*

As to the third element, "[w]hen [the juvenile court] weighs whether termination would be detrimental, . . . the question is just whether losing the relationship with the parent would harm the child to an extent not outweighed, on balance, by the security of a new, adoptive home." (*Caden C.*, *supra*, 11 Cal.5th at p. 634.) "'If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that,' even considering the benefits of a new adoptive home,

11

termination would 'harm[]' the child, the court should not terminate parental rights." (*Id.* at p. 633.)

Mother's reliance on *In re E.T.* (2018) 31 Cal.App.5th 68 is misplaced. In that case, the record demonstrated that the children, four-year-old twins, had lived almost half of their lives with their mother and were "very tied" to her. (*Id.* at p. 77.)

Here, mother did not present any evidence that R.R. would be greatly harmed by the severance of parental rights, or that the security and stability of a new home would not outweigh the loss of that relationship. For example, mother did not present a bonding study or other evidence to show that termination of parental rights would have a detrimental effect on R.R.'s life. (See, e.g., *In re Amber M.* (2002) 103 Cal.App.4th 681, 689-690 [evidence showed beneficial parental relationship outweighed benefits of adoption]; *In re Jerome D. (*2000) 84 Cal.App.4th 1200, 1206-1208 [same].)

We conclude substantial evidence supports the juvenile court's factual findings. The juvenile court did not abuse its discretion in determining that termination of parental rights would not be detrimental to R.R.

*Disposition*

The judgment (orders denying section 388 petition and terminating parental rights) is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P. J.                    BALTODANO, J.

Tari L. Cody and Manuel J. Covarrubias, Judges
Superior Court County of Ventura

_____

Law Offices of Melissa A. Chaitin and Melissa A. Chaitin, under appointment by the Court of Appeal, for Defendant and Appellant.

Tiffany N. North, County Counsel, Joseph J. Randazzo, Principal Assistant County Counsel, for Plaintiff and Respondent.